UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL HARKE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ADA COUNTY SHERIFFS, ADA COUNTY JAIL, ADA COUNTY DEPUTY SHERIFF (name unknown), ADA COUNTY,<br><br>　　　　　Defendants. | Case No. 1:11-cv-00018-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

The following motions are currently pending before the Court in this prisoner civil rights matter: (1) Defendants' Second Motion for Summary Judgment (Dkt. 54); (2) Plaintiff's Motion for Stay of Summary Judgment and/or Motion for Extension of Time (Dkt. 62); (3) Plaintiff's Motion for Appointment of Expert Witness (Dkt. 63); (4) Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. 64); and (5) Defendants' Motion to Strike Plaintiff's Cross-Motion for Partial Summary Judgment and Statement of Undisputed Facts (Dkt. 71).

The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. In the interest of avoiding delay, the Court will decide these matters on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1.

For the reasons that follow, the Court will deny Plaintiff's Motion for Stay of Summary Judgment and/or Motion for Extension of Time, Plaintiff's Motion for Appointment of Expert Witness, Plaintiff's Cross-Motion for Partial Summary Judgment and Defendants' Motion to Strike Plaintiff's Cross-Motion for Partial Summary Judgment and Statement of Undisputed Facts.  The Court will grant Defendants' Second Motion for Summary Judgment.

## BACKGROUND

At the time the Complaint was filed, Plaintiff Michael Harke was an inmate incarcerated in the Idaho State Correctional Institution ("ISCI").  However, at the time of the alleged violations, Plaintiff was a pretrial detainee at the Ada County Jail.

On the morning of December 31, 2008, Ada County Sheriff's Deputy Jack Bish retrieved a bag of razors from the control room for Cell Block 7 in the Ada County Jail.  (Dkt. 54-4, Declaration of Deputy Jack Bish, ("Bish Decl."), ¶ 5.)  The bag contained approximately 20 to 30 razors.  (*Id.*)  The Deputy added approximately 50 to 60 razors he obtained from a box of new razors to the bag.  He then proceeded to distribute the razors to the inmates in Cell Block 7.  (*Id.*)  Plaintiff received one of the razors.  (*Id*; Dkt. 13, ¶ 8.)

While Plaintiff was shaving, he heard other detainees yell out to the Deputy that the razors were used and dirty.  (Dkt. 54-4, Bish Decl., ¶ 7; Dkt. 13, ¶ 10.)  Plaintiff stopped shaving and the Deputy collected back the razors.  (Dkt. 13, ¶¶ 13, 16.)  Plaintiff did not complain of receiving a used razor.  (Dkt. 54-4, Bish Decl., ¶ 8.)  Plaintiff does

not know whether the razor he received was previously used. (Dkt. 54-3, Deposition of Michael E. Harke, ("Harke Depo.") 38:13-24.)

The policy at the Ada County Jail on December 31, 2008 was to discard razors following their use. (Dkt. 54-4, Bish Decl., ¶ 5.) Deputy Bish believed the bag contained unused razors. (*Id*.)

On January 2, 2009, Dr. Keller, the Medical Director at the Ada County Jail discovered that some inmates may have been given previously used razors on December 31, 2008. (Dkt. 54-5, Declaration of Jeffery Keller, M.D., ("Keller Decl."), ¶ 4.) As a result of the incident, Dr. Keller and his staff coordinated with Central District Health to develop a plan to test for Hepatitis and HIV. (*Id*. at ¶¶ 4-5.) On January 2, 2009, blood samples were obtained from inmates in Cell Block 7, including Plaintiff. (*Id*. at ¶¶ 5-6; Dkt. 13, ¶¶ 20-26.) Plaintiff's lab results came back negative for Hepatitis and HIV. (Dkt. 54-5, Keller Decl., ¶ 6.)

On February 18, 2009, Plaintiff submitted a medical request indicating that he had developed blisters on two occasions, the first on January 8 on his right pinky finger and the second on February 14 on his middle finger. (Dkt. 13, ¶¶ 31-37; Dkt 54-5, Keller Decl., ¶ 19.) Plaintiff stated that he was told the blisters were warts, but he was concerned that it was herpes caused by the razor. (*Id*.) On February 20, 2009, medical staff responded that his blisters were not caused by a razor and set an appointment. Plaintiff was seen for his blisters on February 26, 2009. (Dkt. 54-5, Keller Decl., ¶ 21.) Medical staff noted no blisters on his middle finger. (*Id*.)

**MEMORANDUM DECISION AND ORDER - 3**

In April 2009, Plaintiff claims that he had another outbreak of blistering on his stomach and that he was told by medical staff to submit a concern form. (Dkt. 13, ¶ 38-39.) Plaintiff claims that he turned in a medical request form, but that he never heard back from the medical staff. (*Id*. at ¶¶ 41-42.) On April 27, 2009, Plaintiff submitted a medical grievance form in which he stated his concerns about contracting herpes from a razor and needing testing. (*Id*. at ¶ 43; Dkt. 54-5, Keller Decl., ¶ 28.) On the same day medical staff responded and indicated that the normal procedure is to submit a medical request if Plaintiff wanted to be seen and that medical services had not heard from Plaintiff on this particular issue since February 26. (*Id*.) On April 29, 2009, Plaintiff was seen by Dr. Keller. (Dkt. 54-5, Keller Decl., ¶ 29.) Plaintiff informed Dr. Keller of his three episodes of blisters and his concerns that he contracted something from using a dirty razor from the incident on December 31, 2008. (*Id*.) When Dr. Keller saw Plaintiff he had no blisters, so Dr. Keller requested that Plaintiff return when the blisters reappeared. (*Id*.)

On July 17, 2009, Plaintiff submitted another medical grievance regarding a rash and whether it was related to the razor incident. (*Id*. at ¶ 47.) Plaintiff was seen for the rash on July 18, 2009. (*Id*.) The physical examination revealed 4 or 5 red lesions that appeared to be resolving on the stomach, back and face. (*Id*.) It was diagnosed as resolving folliculitis. (*Id*.) This was the last time that Plaintiff was seen by Ada County Jail medical staff regarding blisters, rashes or warts. (*Id*. at ¶ 48.) Plaintiff was discharged from the Ada County Jail on July 23, 2009. (*Id*.)

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff claims that the blisters continued, but he now believes that he suffers from shingles, rather than herpes. (Dkt. 54-3, Harke Depo. 67:6-69:1.) Defendants expert, Dr. Rena Fox has opined in her declaration that shingles cannot be contracted from using a previously used razor. (Dkt. 54-7.)

On January 14, 2011, Plaintiff filed his Complaint. (Dkt. 3.) On June 8, 2011, the Court issued its Initial Review Order dismissing, without prejudice, Plaintiff's Complaint. (Dkt. 7.) On June 23, 2011, Plaintiff filed a Motion to Reconsider (Dkt. 10) and on October 18, 2011, the Court granted the Motion to Reconsider and requested Plaintiff to file an amended complaint. (Dkt. 12.) The Court determined that Plaintiff's allegation that "the custom of not disposing of used razors in the container with a biohazard warning label and proper safety procedure as is required by law" was sufficient to state a deliberate indifference claim against the Ada County Jail. (*Id.*) Plaintiff filed the Amended Complaint on November 17, 2011. (Dkt. 13)

On April 12, 2013, Defendants Ada County Sheriff and Ada County filed Defendants' Second Motion for Summary Judgment. (Dkt. 54.) Defendants argue the following: (1) Plaintiff's constitutional rights were not violated as a result of the razor incident; (2) Plaintiff's constitutional rights were not violated as a result of inadequate medical treatment; (3) any claims asserted against the Ada County Sheriff in his individual capacity should be dismissed; (4) there is no evidence to support any claims against Ada County; (5) Plaintiff's claims are barred by the Prison Litigation Reform Act; (6) Defendants are entitled to qualified immunity; and (7) statutory immunity.

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiff subsequently filed a Motion for Stay of Summary Judgment and/or Motion for Extension of Time, Motion for Appointment of Expert Witness and Cross-Motion for Partial Summary Judgment.

### MOTION FOR APPOINTMENT OF EXPERT WITNESS

Plaintiff has requested that the Court appoint a medical expert to assist him in presenting his claims. (Dkt. 63.) The *in forma pauperis* statute, 28 U.S.C. § 1915, does not authorize federal courts to appoint or authorize payment for expert witnesses for prisoners or other indigent litigants. Ordinarily, the plaintiff must bear the costs of his litigation, including expert expenses, even in pro se cases. *See Pedraza v. Jones*, 71 F.2d 194, 196 (5th Cir. 1995); *Malik v. LaValley*, 994 F.2d 90 (2d Cir. 1993); *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987) (noting that an inmate's dilemma in being unable to proceed with suit because of inability to pay for expert witnesses was no different than that of non-prisoner claimants who face similar problems).

Pursuant to Federal Rule of Evidence 706, a federal court *may* appoint an independent expert witness and allocate the expert's fees among the parties "in such proportion and at such time as the court directs." Fed.R.Evid. 706(b). Under this rule, experts are properly appointed where complex scientific issues are involved, such as determining what the concentration levels of environmental tobacco smoke (ETS) are in a prison and determining the health effects of ETS on nonsmoking prisoners. *McKinney v. Anderson*, 924 F.2d 1500 (9th Cir. 1991), vacated on other grounds by *Heiling v. McKinney*, 502 U.S. 903 (1991). However, courts have recognized that Rule 706 does

**MEMORANDUM DECISION AND ORDER - 6**

not contemplate the appointment of, and compensation for, an expert to aide one of the parties. *See, e.g., Gamez v. Gonzalez*, 2010 WL 2228427, *1 (E.D. Cal. June 3, 2010). In other words, the principal purpose of a court-appointed expert is to assist the trier of fact from a position of neutrality, not to serve as advocate.

In the present case, the issue is whether Defendants were deliberately indifferent to Plaintiff's medical problems, in particular his blister outbreaks. The issue of deliberate indifference regarding these medical issues is not so complicated and difficult that an expert is required as in *McKinney*. Accordingly, the Court will deny Plaintiff's Motion.

## MOTION FOR STAY OF SUMMARY JUDGMENT AND/OR MOTION FOR EXTENSION OF TIME

In Plaintiff's Motion for Stay of Summary Judgment and/or Motion for Extension of Time (Dkt. 62), Plaintiff argues that Defendants' Second Motion for Summary Judgment (Dkt. 54) is premature due to Plaintiff's Motion for the Appointment of Counsel (Dkt. 50), Motion to Compel (Dkt. 49) and Motion for Appointment of Expert Witness. However, given the Court's decision above and the Court's Order on May 2, 2013, (Dkt. 57), in which the Court granted in part Plaintiff's Motion to Compel, extended the deadline for Plaintiff to respond to the Second Motion for Summary Judgment and denied Plaintiff's request for counsel, Plaintiff's Motion to Stay is now moot. Accordingly, the Court will deny the present motion.

## SECOND MOTION FOR SUMMARY JUDGMENT

1.    **Standard**

MEMORANDUM DECISION AND ORDER - 7

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The requirement is that there be no *genuine* dispute as to any *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

**MEMORANDUM DECISION AND ORDER - 8**

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th

**MEMORANDUM DECISION AND ORDER - 9**

Cir. 1988).

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**2.     Discussion**

   **A.     Rights of Pretrial Detainees**

The Fourteenth Amendment Due Process Clause protects a pretrial detainee from punishment prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 534-35 (1979). "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate th Eighth Amendment's bar against cruel and unusual punishment." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). A pretrial detainee's due process rights are at least as a convicted prisoner's Eighth Amendment rights. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) ("[E]ven though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a minimum standard of care for determining their rights . . . .").

At a minimum, all inmates must be provided adequate food, clothing, shelter, sanitation, and medical care and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hoptowit v. Ray* (Hoptowit I),

**MEMORANDUM DECISION AND ORDER - 10**

682 F.2d 1237, 1246 (9th Cir. 1982). All inmates also have a right to be free from "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

In addition, pretrial detainees cannot be punished. Thus, to determine whether pretrial detention conditions meet constitutional standards, the Court must determine whether those conditions constitute punishment of the detainee. *Bell*, 441 U.S. at 535. "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Pierce*, 526 F.3d at 1205 (quoting *Bell*, 441 U.S. at 538). To implicate constitutional standards, the harm or disability must either significantly exceed or exist apart from the inherent discomforts of confinement. *See Demery v. Arpaio* 378 F.3d 1020, 1030 (9th Cir. 2004). To determine whether an action's purpose is punitive, in the absence of evidence of express intent, a court may infer that the purpose of a particular restriction or condition is punishment if the restriction or condition is not reasonably related to a legitimate governmental objective or excessive in relation to the legitimate governmental objective. *Pierce*, 526 F.3d at 1205 (citing *Bell*, 441 U.S. at 539); *Demery*, 378 F.3d at 1028 (citing *Bell*, 441 at 538).

At the same time, there are "limits on the extent to which pretrial detainees may claim they are being punished in violation of the fourteenth amendment." *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir. 1991). "In determining whether a

**MEMORANDUM DECISION AND ORDER - 11**

substantive right protected by the due process clause has been violated, it is necessary to balance 'the liberty of the individual' and the 'demands of an organized society.'" *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982)). These demands necessarily include management of a jail or prison system. *Id.*

### B. Deliberate Indifference - Used Razor Policy

Defendants argue that the jail's used razor policy did not create a constitutional violation. (Dkt. 54-1, p. 9.) Defendants argue Plaintiff has failed to allege any facts that would suggest that he was subjected to inhumane conditions of confinement that imposed an excessive risk to his health or safety, or that indicate a culpable state of mind on the part of the Defendants.

In the present matter, Plaintiff has not demonstrated an objective showing that his deprivation or "harm" was sufficiently serious. While Plaintiff alleges that the jail's policy and custom created unsafe conditions and an unsanitary environment (Dkt. 66, pp. 7-10 ), Plaintiff's claims are vague and based on unverified statements. Plaintiff simply infers that because used razors may have been distributed to inmates on December 31, 2008, Defendants' policy must have been unconstitutional. Plaintiff has not shown a causal link between the policy and the distribution of used razors, nor has he shown that the incident on December 31, 2008 was anything, but a one time mistake. There is no evidence in the record to suggest that Defendants' policy and custom led to other similar incidents. While Plaintiff argues that state health codes and OSHA standards determine

**MEMORANDUM DECISION AND ORDER - 12**

what prison decency standards are (Dkt. 66, p. 7), Plaintiff fails to cite to any specific health codes or OSHA standards, nor does he demonstrate that such are applicable to the Ada County Jail. In addition, Plaintiff has not established that failure to abide by OSHA constitutes a constitutional violation. Furthermore, Plaintiff has not even demonstrated that he received a used razor and that it caused him physical harm. (Dkt. 54-3, Deposition of Michael E. Harke, 38:13-24.)

Plaintiff has also failed to demonstrate a subjective showing that the purpose of the jail's policy and custom was to punish Plaintiff. As stated above, there is no evidence to suggest that the incident at issue was anything but a one time mistake. (Dkt. 54-4, Bish Decl.) There is no evidence to establish that the Defendants knew that Plaintiff faced a substantial risk of serious harm and consciously disregarded the risk by failing to take reasonable measure to abate it. Rather, the facts of this case demonstrate that razors were distributed with the belief that they were new razors. (*Id*. at ¶¶ 5,9.) Once an inmate raised concerns, the deputies acted promptly and appropriately in an effort to remedy any potential problem. (*Id*. at ¶ 7.) The policy of the jail was for the razors to be disregarded after every use. (*Id*. at ¶ 5.) Accordingly, Defendants are entitled to summary judgment.

### C. Deliberate Indifference - Medical Needs

#### I. *Defendants' Involvement*

Defendants argue that they were not directly involved in Plaintiff's medical care and therefore cannot be held liable for deliberate indifference to Plaintiff's medical care.

Government officials may not be held liable for the actions of their subordinates

**MEMORANDUM DECISION AND ORDER - 13**

under a theory of respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). However, a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "A plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connections is present and the plaintiff was deprived under color of law of a federally secured right." *Id*. (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)(en banc)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervisor, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208.

In the present case, Plaintiff has not offered any evidence indicating that the named Defendants were involved in conduct that could be construed as deliberate indifference to Plaintiff's medical care. Plaintiff's medical care was provided by Dr. Keller and his

**MEMORANDUM DECISION AND ORDER - 14**

staff.  (Dkt. 54-5, Keller Decl.)  Plaintiff has not established that Defendants were involved in his medical care in any way, nor a sufficient causal connection between any wrongful acts by Defendants and deliberate indifference to his medical care.  There are no allegations that Defendants set in motion a "series of acts" or implemented a policy which resulted in a violation of Plaintiff's constitutional rights.  While Plaintiff argues that he should be allowed to amend his complaint to add "Ada County Medical Providers," (Dkt. 66, p. 16), the discovery and dispositive motion deadlines in this matter have long since past and Plaintiff should have been on notice much earlier than now of possible claims against the medical providers.   Accordingly, Plaintiff's claims of deliberate indifference to his medical needs will be subject to summary judgment.

### ii. *Medical Care Provided to Plaintiff*

While the Court has already determined that Defendants are entitled to summary judgment because of their lack of involvement in Plaintiff's medical care, the Court alternatively determines that Plaintiff has not demonstrated deliberate indifference to Plaintiff's medical needs.

Failure to provide medial treatment amounts to a cruel and unusual punishment when (1) a detainee has a "serious medical need" and (2) detention officials are "deliberately indifferent" to that need.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Farmer v. Brennan*, 511 U.S. 825, 837 (1984).  A serious medical need exists when viewed objectively, "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at

**MEMORANDUM DECISION AND ORDER - 15**

1096.

Deliberate indifference requires that a detention official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The test is a subjective one because "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Id*. at 844.

An "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). In addition, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

In the present matter, Plaintiff claims that he was misdiagnosed, ignored, not properly treated and left in pain. At the most, Plaintiff sets forth that jail officials were negligent. Plaintiff has not established that jail officials acted with deliberate indifference in tending to his medical needs. Nowhere has Plaintiff set forth facts that jail officials

**MEMORANDUM DECISION AND ORDER - 16**

knew a substantial risk of serious harm existed concerning Plaintiff and disregarded the risk. Accordingly, Plaintiff's deliberate indifference claims relating to his medical care are subject to summary judgment.

## CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff argues he is entitled to partial summary judgment, because "the evidence shows that under color of law the Defendants did cause compensatory damages in loss income when through hazardous negligence following unsafe custom and dangerously inadequate policy, did distribute used razors from non curable diseased inmates to Plaintiff and Plaintiff used said razor, violating Plaintiff's Fourteenth Amendment Right of no punishment when said Defendants acting under color of State law to ensure inmates safety." (Dkt. 64-1, 1.) Given that the Court granted Defendants' Motion for Summary Judgment, the Court will deny this motion for the reasons discussed above.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Appointment of Expert Witnesses (Dkt. 63) is DENIED.

2. Plaintiff's Motion for Stay of Summary Judgment and/or Motion for Extension of Time (Dkt. 62) is DENIED.

3. Plaintiff's Cross Motion for Partial Summary Judgment (Dkt. 64) is DENIED.

4. Defendants' Motion to Strike Plaintiff's Cross-Motion for Partial Summary

**MEMORANDUM DECISION AND ORDER - 17**

Judgment and Statement of Undisputed Facts (Dkt. 71) is DENIED.

5. Defendants' Second Motion for Summary Judgment (Dkt. 54) is GRANTED. Defendants Ada County Sheriffs and Ada County are dismissed from this action with prejudice.

6. Defendants Ada County Jail and Ada County Deputy Sheriff (name unknown) are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) for Plaintiff's failure to prosecute these Defendants and because Plaintiff asserts the same claims against these Defendants as were in issue under the Second Motion for Summary Judgment. This entire case is dismissed with prejudice.

DATED: **September 30, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 18**